**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSEDALE MANOR ASSOCIATES, LLP, : | |
| : | |
| Plaintiff,    : | Civ. No. 04-341 (GEB) |
| : | |
| v.    : | **MEMORANDUM OPINION** |
| : | |
| THE BOROUGH OF MADISON, NEW JERSEY, : | |
| a municipal corporation; STEPHEN JONES, : | |
| individually, the Construction Official of the : | |
| Borough of Madison, New Jersey; LIN : | |
| CELLULAR COMMUNICATIONS (NY), LLC : | |
| d/b/a CINGULAR WIRELESS f/k/a CELLULAR : | |
| TELEPHONE COMPANY d/b/a AT&T : | |
| WIRELESS; NEXTEL COMMUNICATIONS, : | |
| INC., a Delaware Corporation; OMNIPOINT : | |
| FACILITIES NETWORK 2, LLC, by its agent, : | |
| OMNIPOINT COMMUNICATIONS, INC., : | |
| : | |
| Defendants.    : | |
| : | |

**BROWN, Chief Judge**

This matter comes before the Court upon: (1) Defendant Lin Cellular Communications

(NY), LLC d/b/a Cingular Wireless f/k/a Cellular Telephone Company d/b/a AT&T Wireless's

("Cingular") motion to dismiss the Verified Supplement to the Amended Complaint ("Verified

Supplement"); (2) Defendants Borough of Madison ("Borough") and Stephen Jones's

(collectively the "Municipal Defendants") motion to dismiss the Verified Supplement;

(3) Defendant Omnipoint Facilities Network 2, LLC, by its agent, Omnipoint Communications,

Inc., d/b/a/ T-Mobile's ("T-Mobile") motion to dismiss the Verified Supplement; (4) Defendant

1

Cingular's motion to dismiss and for summary judgment; (5) Defendant Stephen Jones's motion

to dismiss, converted in part to a motion for summary judgment; (6) Defendant Borough of

Madison's motion to dismiss and for summary judgment; and (7) Plaintiff Rosedale Manor

Associates, LLP's ("Plaintiff" or "Rosedale") motion for partial summary judgment.  The Court

has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  The Court has read and fully

considered all of the parties' submissions.  For the reasons set forth below, the Court will:

(1) deny Cingular's motion to dismiss the Verified Supplement [docket entry #54]; (2) deny the

Municipal Defendants' motion to dismiss the Verified Supplement [docket entry #60]; (3) deny

T-Mobile's motion to dismiss the Verified Supplement [docket entry #59]; (4) grant in part and

deny in part Cingular's motion to dismiss and for summary judgment [docket entry #19];

(5) grant Defendant Jones's motion to dismiss [docket entry #20]; (6) grant in part and deny in

part the Borough's motion to dismiss and for summary judgment [docket entry #21]; and

(7) deny Plaintiff's motion for partial summary judgment [docket entry #70].


I.      **BACKGROUND**

        A.      **The Parties**

        Plaintiff is the owner of a garden apartment complex located at 171 Main Street in the

Borough of Madison.  (Am. Compl. ¶ 11.)  The property is designated as Block 2601, Lot 25, on

the tax map for the Borough.  (*Id.* ¶ 12.)  The Borough owns and operates the area adjacent to

Plaintiff's property, which area is designated Block 2601, Lot 26.  (*Id.* ¶¶ 13-14.)  At the time

that Plaintiff filed the present lawsuit, the Borough used the property as a site for an electrical

substation.  (*Id.* ¶ 24.)  Defendant Jones is a construction official employed by the Borough.  (*See*

*id.* ¶ 9.)  Defendant Cingular is a wireless communication carrier that constructed the tower located on the property and that is the subject of this dispute ("Tower").  (*See id.* ¶¶ 32-34.) Defendants Nextel and T-Mobile are wireless communication carriers that have entered agreements with the Borough to co-locate on the Tower.  (Verified Supplement to Am. Compl. ¶ 19.)

### B.      Ordinance 9-2002

On or about March 11, 2002, the Borough of Madison enacted Ordinance 9-2002, which specified certain land use requirements for the development of wireless communication antennas in the Borough.  The ordinance provided that "'Wireless Communication Antennas', and any proposed supporting tower and related electronic equipment, shall require 'Preliminary Major Site Plan' approval . . . and 'Final Major Site Plan' [approval]" pursuant to the relevant terms of the New Jersey Municipal Land Use Law, N.J.S.A. 40:55D-1, *et seq.* ("MLUL").

Ordinance 9-2002 also included a section listing the location priorities for selecting antenna sites.  That section stated that "[t]he first priority location shall be on lands owned by the Borough of Madison utilizing an existing or approved wireless communication tower, an existing building, an existing or approved water tower or water standpipe, or an existing telephone or electric pole or tower."  (Borough of Madison, N.J., Ordinance 9-2002 (March 11, 2002).)  The terms of Ordinance 9-2002 were adopted as the Borough's Land Development Ordinance § 195-33B(10), entitled "Wireless Communication Antennas."

On November 5, 2002, as a result of litigation challenging the terms of Ordinance 9-2002, the Superior Court of New Jersey found that the priorities section of the ordinance favoring

municipally owned properties was unconstitutional.  *Rose City Associates, LP v. Borough of Madison*, No. MRS-L-1380-02 (N.J. Super. Ct. Law Div. Nov. 5, 2002).  The court, however, did not invalidate the other sections of the ordinance, including the site plan approval requirements set forth in Ordinance 9-2002 and codified in Land Development Ordinance § 195-33B(10).  Those requirements remain in effect.

### C.      Ordinances 2-2003 and 7-2003

On or about March 10, 2003, and in response to the Superior Court's invalidation of the priorities section contained in Ordinance 9-2002, the Borough enacted Ordinances 2-2003 and 7-2003.  Ordinance 2-2003 replaced the previous invalidated priorities list with a new list of location priorities.  The new priorities section gives first priority to "an existing or municipally approved wireless communication tower in any zone, or an existing telephone or electric pole or tower in the non-residential zones listed in [the relevant section]."  (Borough of Madison, N.J., Ordinance 2-2003 (March 10, 2003).)  It gives second priority to "lands situated within the Borough of Madison zoned within [certain designated] zoning districts; or on lands within the Borough of Madison situated in any zoning district which land contains an existing utility facility with an above ground structure that contains one or more existing ground buildings."  (*Id.*)  The new priorities section therefore no longer gives priority to lands owned by the Borough.  Instead, it gives priority to lands based on the presence of certain structures and their location, regardless of ownership.

The Borough also enacted Ordinance 7-2003, which adds a list of exceptions to the general site plan approval requirements set forth in the Borough's Land Development Ordinance

§ 195-33B(10).  Ordinance 7-2003 includes on its list of exceptions "[a]ny structure or use on municipal properties."  (Borough of Madison, N.J., Ordinance 7-2003 (March 10, 2003).)  Plaintiff's present action challenges Ordinance 2-2003's priorities section and Ordinance 7-2003's exemption of municipal properties from the general site plan approval requirements for wireless communication antenna sites.

### D.      The Present Litigation

Plaintiff brought this action on January 29, 2004, and filed its Amended Complaint on June 9, 2004.  Plaintiff asserts several claims, including:  (1) violation of the Borough's Land Development Ordinance § 195-33B(10) and the MLUL; (2) unconstitutional vagueness; (3) deprivation of procedural and substantive due process; (4) deprivation of equal protection; and (5) common law nuisance.  Plaintiff asserts its constitutional claims pursuant to 42 U.S.C. § 1983.

### 1.      Plaintiff's Application for Temporary Restraints and a Preliminary Injunction and Its Request for a Stay

Plaintiff made an application for temporary restraints and preliminary injunctive relief, and on July 21, 2004, the Court held a hearing concerning Plaintiff's application.  The Court denied the application for temporary restraints, and scheduled further briefing with respect to Plaintiff's application for a preliminary injunction.  On July 7, 2005, the parties engaged in oral argument concerning the matter, and on August 15, 2005, the Court issued its decision denying preliminary injunctive relief.

Plaintiff also requested that this Court stay the present action pursuant to *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).  On April 15, 2005, the Court, after considering the parties' submissions concerning that issue, denied Plaintiff's request.

### 2.   The Parties' Pending Motions to Dismiss and for Summary Judgment

On August 13, 2004, Defendants Cingular and Jones separately filed motions to dismiss Plaintiff's claims.  On August 20, 2004, the Borough also filed a motion to dismiss.  The parties engaged in oral argument on January 18, 2005, with respect to those motions.  On March 11, 2005, the Court ordered that the parties engage in limited discovery concerning the public and private uses of the Tower, and converted Defendants' motions to dismiss into motions for summary judgment with respect to those issues.  (Order (3/11/05).)

On June 6, 2005, Plaintiff filed a Verified Supplement to the Amended Complaint, seeking to name Nextel and T-Mobile as additional defendants.  On June 17, 2005, Cingular, T-Mobile, and the Municipal Defendants filed motions to dismiss the Verified Supplement.

On January 19, 2006, Plaintiff filed a motion for partial summary judgment of its substantive and procedural due process claims.  Defendants' respective motions to dismiss and for summary judgment, and Plaintiff's motion for partial summary judgment, currently remain pending.  This case was reassigned to the undersigned on November 2, 2006.  The parties have completed briefing, and the Court will address the pending motions.

II.     **DISCUSSION**

      A.     **Defendants' Motions to Dismiss the Verified Supplement to the Amended Complaint**

Defendants argue that the Court should dismiss Plaintiff's Verified Supplement to the Amended Complaint because it was filed without leave of the Court.  Federal Rules of Civil Procedure Rule 15(d) provides that "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."  "Rule 15(d) serves judicial economy, avoids multiplicity of litigation, and promotes 'as complete an adjudication of the dispute between the parties as possible . . . .'"  *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 360 (D.N.J. 2000) (citations omitted).

"The decision of whether to permit a supplemental pleading is within [the court]'s discretion."  *Id.*  "Leave to file a supplemental complaint should be freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to defendants, or futility, and when the supplemental facts are connected to the original pleading."  *Id.* at 361.  "Although Rule 15(d) does not include the same express mandate as Rule 15(a) [that 'leave shall be freely given'], courts construe it to require a similarly liberal approach."  *Id.* at 360.

The Court finds that dismissal of the Verified Supplement on this ground is unwarranted. Defendants have not identified any prejudice that they will suffer as a result of Plaintiff's filing of the Verified Supplement.  Defendants also have not identified any inappropriate conduct by Plaintiff in filing that pleading.  Defendants' motions to dismiss the Verified Supplement are

therefore denied.

### B.      Defendants' Motions to Dismiss and for Summary Judgment

In its August 15, 2005, denial of Plaintiff's motion for a preliminary injunction, the Court noted that the extent to which the Tower is used for public purposes is relevant to Plaintiff's claim that the Borough of Madison is not immune from its own zoning ordinances.  (Mem. Op. at 26 (August 15, 2005).)  For that reason, the Court permitted the parties to engage in limited discovery concerning the public and private uses of the Tower, and converted Defendants' motions to dismiss into motions for summary judgment with respect to those issues only.

In deciding Defendants' present motions, the Court will evaluate Plaintiff's claims pursuant to the standard for motions to dismiss.  Insofar as the parties have engaged in limited discovery regarding the issue of the Borough's immunity from its own ordinances, if Plaintiff's challenge to the Borough's immunity survives Defendants' motions to dismiss, the Court will further evaluate that claim pursuant to the summary judgment standard.

### 1.      Standards of Review

In considering a Rule 12(b)(6) motion to dismiss, a court "must accept all well pleaded allegations in the complaint as true and view them in the light most favorable to plaintiff." *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir.), *cert. denied*, 474 U.S. 935 (1985).  The court may dismiss a complaint only if the plaintiff can prove no set of facts that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *See also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  A court,

however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

In contrast, when deciding a motion for summary judgment, a court should grant the motion if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## 2.      Statute of Limitations

Defendants argue, as an initial matter, that Plaintiff asserted its claims after the 45 day limitations period that applies to actions in lieu of prerogative writs.

"[J]udicial review of the actions of a municipality where there is no administrative appeal procedure is in the Law Division by an action in lieu of prerogative writs" pursuant to Rule 4:69-1 of the New Jersey Rules Governing Civil Practice. *Dolan v. City of E. Orange*, 287 N.J. Super.

136, 142 (App. Div. 1996).  "Rule 4:69-6(a) . . . provides that '[n]o action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed.'"  *Borough of Princeton v. Bd. of Chosen Freeholders of the County of Mercer*, 169 N.J. 135, 152 (2001) (quoting R. 4:69-6(a)).  Where an action commences after the 45 day period, however, Rule 4:69-6(c) "authorizes enlargement [of the limitations period] 'where it is manifest that the interest of justice so requires.'"  *See id.* (quoting R. 4:69-6(c)).

Here, Plaintiff has not asserted a claim based on Rule 4:69-1 of the New Jersey Rules. Defendants' arguments concerning the relevant limitations period for such claims therefore do not apply to this case.  Dismissal of Plaintiff's claims on statute of limitations grounds is therefore inappropriate.

### 3.     Claim Preclusion

Defendants also argue that the present action is barred as a result of claim preclusion. "Claim preclusion, formerly referred to as res judicata, gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding."  *Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992).  "Claim preclusion requires:  (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action."  *Id.*

According to Defendants, in challenging Ordinance 9-2002 in the New Jersey Superior Court, Plaintiff was required to challenge every aspect of the ordinance, including the site plan approval requirements that the ordinance prescribed.  Plaintiff, however, is not challenging the

site plan approval requirements of Ordinance 9-2002 – indeed, it is attempting to enforce those requirements.  Plaintiff challenges instead the municipal exemption provided by Ordinance 7-2003, which was enacted only after the Superior Court's decision.  The present suit, then, does not concern the same cause of action, and is therefore not barred by claim preclusion.

### 4.    Qualified Immunity

Defendant Jones argues that Plaintiff's claims against him should be dismissed because he is protected by qualified immunity.  The doctrine of qualified immunity shields government officials performing discretionary functions from liability if their alleged conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotations omitted).  Issues concerning qualified immunity must therefore be resolved at the earliest possible stage of litigation.  *Id.* at 201.

Here, Plaintiff's only allegation concerning Defendant Jones is that he served as the Borough's construction official.  (Am. Compl. ¶ 9.)  Plaintiff has failed to make any allegations concerning any conduct engaged in by Defendant Jones.  Absent such allegations, Plaintiff's claims against Defendant Jones should be dismissed, both for failure to state a claim and as a result of qualified immunity.

11

5.      **The Borough's Municipal Powers**

Plaintiff claims that, in building and operating the Tower, Defendants have violated Land Development Ordinance § 195-33B(10) and the relevant provisions of the MLUL.  Plaintiff argues that those provisions require site plan approval for wireless communication antennas, and that Defendants have failed to seek such approval.  Defendants, meanwhile, argue that Ordinance 7-2003 specifically exempts "[a]ny structure or use on municipal properties" from the site plan approval requirements, and that the Borough has the power to exempt itself from its own ordinances in such a manner.  The question, then, is whether the Borough is authorized to make property that it owns immune from its site plan approval requirements by enacting Ordinance 7-2003.

The New Jersey Supreme Court has observed that "[t]he question of what governmental units or instrumentalities are immune from municipal land use regulations, and to what extent, is not one properly susceptible of absolute or ritualistic answer."  *Rutgers v. Piluso*, 60 N.J. 142, 150 (1972).  Under New Jersey law, "the true test of immunity" is determining "the legislative intent . . . with respect to the particular agency or function involved."  *Id.* at 152.  "That intent, rarely specifically expressed, is to be divined from a consideration of many factors, with a value judgment reached on an overall evaluation."  *Id*.  The relevant factors include:  (1) the nature and scope of the instrumentality seeking immunity; (2) the kind of function or land use involved; (3) the extent of the public interest to be served thereby; (4) the effect local land use regulation would have upon the enterprise concerned; and (5) the impact upon legitimate local interests.  *Id.* at 153.

### a.      Whether Plaintiff Has Adequately Stated Its Claim

Taking Plaintiff's allegations as true, and viewing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately stated a claim that the Borough was not immune from its own site plan approval requirements.  In particular, if its allegations are proven true, at least two of the five *Rutgers* factors would favor Plaintiff's challenge to the Borough's immunity.  The third factor would favor Plaintiff because it has alleged that the Borough is not acting in its governmental capacity, and is instead performing a private activity by collecting annual rents from the Wireless Carriers for the use of the Tower.  (Am. Compl. ¶¶ 33, 39; Verified Supplement to Am. Compl. ¶ 24.)  The fourth factor would also favor Plaintiff – it may be able to demonstrate that Ordinance 7-2003's exemption facilitates only proprietary activities, or that the Borough could achieve the public benefits of wireless communication antennas even without the exemption, *i.e.* in compliance with the Borough's general site plan approval requirements.  (Am. Compl. ¶¶ 39-40, 49(3).)  Cingular and the Borough's motions to dismiss this claim are therefore denied.

### b.      Whether There Are Any Genuine Issues of Material Fact

The parties have engaged in limited discovery with respect to only one issue, namely, the public and private uses of the Tower.  That issue is relevant to the third factor of the *Rutgers* test.  The parties have not, however, engaged in relevant fact discovery concerning the remaining *Rutgers* factors.  The Court will therefore dismiss, without prejudice, Cingular and the Borough's motions for summary judgment of Plaintiff's claim that Defendants failed to satisfy the Borough's general site plan approval requirements.  The parties are permitted to seek summary

judgment upon completion of fact discovery relevant to all aspects of this claim.

6.       **Plaintiff's Constitutional Claims**

"To state a claim for relief in an action brought under § 1983, [claimants] must establish

that they were deprived of a right secured by the Constitution or laws of the United States, and

that the alleged deprivation was committed under color of state law."  *Am. Mfrs. Mut. Ins. Co. v.*

*Sullivan*, 526 U.S. 40, 49-50 (1999).  Plaintiff asserts several constitutional claims pursuant to

§ 1983 against Defendants.  The Court will address those claims separately.

a.       **The Nature of the Parties**

(1)       **Plaintiff's Claims Against the Wireless Carriers**

Plaintiff asserts its claims against both government and private actors.  "As a general

matter the protections of the Fourteenth Amendment do not extend to 'private conduct abridging

individual rights.'"  *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)

(quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)).  "'Careful adherence to

the 'state action' requirement preserves an area of individual freedom by limiting the reach of

federal law' and avoids the imposition of responsibility on a State for conduct it could not

control."  *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-37 (1982)).  Private

entities, even if heavily regulated, are not held to constitutional standards unless "there is a

sufficiently close nexus between the State and the challenged action of the regulated entity so that

the action of the latter may be fairly treated as that of the State itself."  *Am. Mfrs. Mut. Ins.*, 526

U.S. at 52 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  "Action taken by

14

private entities with the mere approval or acquiescence of the State is not state action." *Id.*

In determining whether a private party should be treated as a state actor, a court should begin "by identifying 'the specific conduct of which the plaintiff complains.'" *Id.* at 51 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). *See also Blum*, 457 U.S. at 1003 ("Faithful adherence to the 'state action' requirement of the Fourteenth Amendment requires careful attention to the gravamen of the plaintiff's complaint").

Here, Plaintiff primarily challenges Ordinance 7-2003's exemption of municipally owned properties from the site plan approval requirements for wireless communication antennas. The only allegations concerning Cingular are based on its bidding for the construction of the Tower and its subsequent rental and use of the Tower. (Am. Compl. ¶¶ 33-38.) As for Nextel and T-Mobile, Plaintiff alleges only that they entered agreements with the Borough to co-locate on the Tower. (Verified Supplement to Am. Compl. ¶¶ 19-20.) Plaintiff's allegations that the Wireless Carriers sought and paid for the use of the Tower as part of their wireless service businesses, without more, do not subject them to Plaintiff's constitutional claims. *See Gannett Satellite Info. Network, Inc. v. Berger*, 894 F.2d 61, 67 (3d Cir. 1990) (holding that concessionaires who leased space at an airport were not subject to constitutional scrutiny because they were "private entities pursuing private ends"). *See also Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 189 (3d Cir. 2000) (holding that the plaintiff failed to state due process and equal protection claims against defendant casino because "[s]tate regulation and the [Casino Control Commission]'s authorization of casino activities do not transform the casinos into state actors"). Plaintiff's constitutional claims against the Wireless Carriers are therefore dismissed.

15

### (2)   Plaintiff's Claims Against the Borough

Plaintiff claims that the Borough violated its constitutional rights by impeding on certain protected interests.  Those interests, however, include both its own interests and the interests of third parties not shared by Plaintiff.  The Court must therefore determine what claims Plaintiff has standing to assert before reaching the merits of its claims.

### b.   Plaintiff's Standing to Assert Its Constitutional Claims

The doctrine of standing is "'comprised of both constitutional and prudential components.'"  *Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County*, 271 F.3d 140, 145 (3d Cir. 2001) (quoting *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 225 (3d Cir. 1998)).  The prudential considerations "constitute a supplemental aspect of the basic standing analysis and address concerns regarding the need for judicial restraint."  *Id.*  "Prudential standing entails an inquiry into a plaintiff's role because '[t]he aim of this form of judicial self-governance is to determine whether the plaintiff is 'a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.''"  *Id.* (quoting *Conte Bros.*, 165 F.3d at 225 (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8 (1986))).  The Third Circuit Court of Appeals has provided a three-part test for determining whether a party satisfies prudential standing.

> First, prudential standing requires that a litigant assert his or her own legal interests rather than those of a third party.  Second, courts refrain from adjudicating abstract questions of wide public significance amounting to generalized grievances.  Third, a plaintiff must demonstrate that his or her interests are arguably within the 'zone of interests' that are intended to be protected by the statute, rule, or constitutional provision on which the claim is based.

16

*Mariana v. Fisher*, 338 F.3d 189, 205 (3d Cir. 2003) (internal citations omitted).

### c.       Plaintiff's Substantive Due Process Claim

Plaintiff claims that Ordinances 2-2003 and 7-2003 violated its substantive due process rights because they impermissibly exempted municipal property from site plan approval requirements.  Plaintiff claims that the ordinances thereby gave the Borough an unlawful advantage relative to private landowners who are required to seek site plan approval for constructing wireless communication antennas.  In making that argument, Plaintiff seeks to protect the legal interests of third parties, *i.e.* private landowners who want to construct wireless communication antennas on their land but may be disadvantaged by the ordinances' preferential treatment of the Borough.  The Court therefore finds that Plaintiff lacks standing to assert its substantive due process claim insofar as the claim is based on allegations that the challenged ordinances gave the Borough an unlawful advantage in constructing the Tower on its property. *See Mariana*, 338 F.3d at 205 ("prudential standing requires that a litigant assert his or her own legal interests rather than those of a third party").

Plaintiff has standing, however, to assert its claims to protect its property interest as the owner of a garden apartment complex located on the property adjacent to the Tower.  (Am. Compl. ¶¶ 11-14.)  Plaintiff claims that the construction and operation of the Tower "substantially impair[s] the use and enjoyment of the Rosedale" and "the character of the surrounding area," and has an "adverse impact on surrounding properties." (*Id.* ¶ 81.)  The Court will therefore address Plaintiff's claim with respect to those alleged harms for which Plaintiff has standing to sue.

17

### (1)     Requirements for Substantive Due Process Claims

The Third Circuit Court of Appeals has explained that "[t]here is a distinction in the standard of review for legislative and executive acts that allegedly violate substantive due process." *County Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006).  With respect to legislative acts, "[t]ypically, [such acts] will withstand substantive due process challenge if the government 'identifies [the] legitimate state interest that the legislature could rationally conclude was served by the statute.'"  *Id.* (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000)).

With respect to executive acts, a plaintiff must demonstrate that the disputed conduct "shocks the conscience." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 401 (3d Cir. 2003).  "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense' . . .  [T]he Due Process Clause was intended to prevent government officials 'from abusing [their] power, or employing it as an instrument of oppression.'" *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992) (internal quotations omitted)).  "[Judicial] concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.* at 850.

### (2)     The Borough's Legislative Acts

Here, Plaintiff challenges the Borough's enactment of Ordinances 2-2003 and 7-2003, which are legislative in nature.  As the Supreme Court has observed, "[i]t has long been clear that zoning legislation is entitled to deference and respect." *Doe v. City of Butler*, 892 F.2d 315, 318

(3d Cir. 1989).  A court must uphold a zoning ordinance "if the legislation is reasonable and not arbitrary and bears a rational relationship to a permissible state objective."  *Id.* (citations omitted).  The challenged ordinances in this case, however, do not govern any conduct engaged in by Plaintiff.  The ordinances instead govern those who are interested in developing wireless communication antennas, *i.e.* owners of properties that must comply with site plan approval requirements.  Plaintiff therefore lacks standing to assert its substantive due process claim based on the alleged unconstitutionality of Ordinances 2-2003 and 7-2003.

### (3)  The Borough's Executive Acts

To the extent that Plaintiff challenges executive acts by the Borough in soliciting and selecting bids for the construction of the Tower, it has failed to allege conduct that impedes on its property interests in a manner that "shocks the conscience."

Plaintiff claims that the construction and operation of the Tower "substantially impair[s] the use and enjoyment of the Rosedale" and "the character of the surrounding area," and has an "adverse impact on surrounding properties."  (Am. Compl. ¶ 81.)  Plaintiff, however, fails to make any further allegations concerning how the Tower deprives it of its property interest – it only alleges facts concerning the Borough's executive acts towards wireless carriers.  (*Id.* ¶ 32 (alleging that the Borough solicited bids for the construction of the Tower).)  Plaintiff's allegations, therefore, fail to support a claim of violation of substantive due process with respect to the Borough's executive acts towards Plaintiff.

For these reasons, Plaintiff's substantive due process claim should be dismissed.

**d.      Plaintiff's Procedural Due Process Claim**

"'The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.''" *Miller v. City of Phila.*, 174 F.3d 368, 373 (3d Cir. 1999) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted)). "In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). "Once [a court] determine[s] that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

"To satisfy due process requirements, the notice provided must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Taylor v. Slick*, 178 F.3d 698, 703 (3d Cir. 1999) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "The level of notice to be given, however, depends on the interest at issue because 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (quoting *Morrissey*, 408 U.S. at 481).

In determining what procedural safeguards are required, a court should consider three factors:  (1) the private interest affected by the official action; (2) the risk that the plaintiff will suffer an erroneous deprivation through the procedure used and the probable value, if any, of additional procedural safeguards; and (3) the government's interest. *Reichley v. Pa. Dep't of Agric.*, 427 F.3d 236, 246 (3d Cir. 2005) (citing *Mathews*, 424 U.S. at 334-35).

Plaintiff, as the owner of the property adjacent to the Tower, has a property interest

sufficient to raise procedural due process concerns.  The parties have engaged only in limited

discovery concerning the uses of the Tower – they have not completed discovery regarding what

opportunities the Borough gave to property owners such as Plaintiff to present their objections.

*See Taylor*, 178 F.3d at 703.  The Court will therefore deny the Borough's motion to dismiss

Plaintiff's procedural due process claim.  The Court will also deny without prejudice the

Borough's motion for summary judgment with respect to the procedural due process claim, and

allow the parties to engage in discovery relevant to that claim.

### e.       Plaintiff's Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny any person within its jurisdiction the equal protection of the laws.'"  *Congregation*

*Kol Ami v. Abington Twp.*, 309 F.3d 120, 133 (3d Cir. 2002) (quoting U.S. Const. Amend. XIV).

"This is 'essentially a direction that all persons similarly situated should be treated alike.'"  *Id.*

(quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "Like other

economic and social legislation, land use ordinances that do not classify by race, alienage, or

national origin, will survive an attack based on the Equal Protection Clause if the law is

''reasonable, not arbitrary' and bears 'a rational relationship to a (permissible) state objective.''"

*Id.* (quoting *Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 8 (1974)).  *See also County Concrete*, 442

F.3d at 171 (stating that in considering equal protection challenges to zoning ordinances, "the

question is whether 'the [municipality] has irrationally distinguished between similarly situated

classes'") (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 689 (3d Cir. 1980)).

Plaintiff argues that the exemption of municipally owned lands from site plan approval

requirements constitutes a violation of equal protection.  The exemption, however, concerns only sites to be used for wireless communication antennas.  With respect to such sites, the exemption distinguishes land owned by the Borough and land that the Borough does not own.  Plaintiff does not allege that it seeks to construct an antenna on its property, and therefore lacks standing to assert its equal protection claim.  The claim will therefore be dismissed.


### f.      Plaintiff's Vagueness Claim

To succeed on a claim that a law is unconstitutionally vague, "the complainant must demonstrate that the law is impermissibly vague in all of its applications."  *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982).  The Supreme Court has stated that laws should "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."  *Id.* at 498 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).  The Court has also stated that "laws must provide explicit standards for those who apply them."  *Id.* (quoting *Grayned*, 408 U.S. at 108).  "The degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment."  *Id.*  The Court has acknowledged a "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."  *Id.* at 498-99.

Here, Plaintiff claims that Ordinances 7-2003 and 2-2003 are unconstitutionally vague.  It argues that Ordinance 7-2003 is unconstitutional because it "contradicts the MLUL's requirement that conditional uses obtain site plan approval."  (Pl.'s Opp. Br. 41 (11/4/04).)  It also argues that 2-2003 is unconstitutional because the ordinance fails to define the terms

"municipally approved" and "existing utility facility."  (*Id.* 42.)

Plaintiff challenges the language used in Ordinances 2-2003 and 7-2003.  Those ordinances, however, do not govern Plaintiff's conduct, only the conduct of those seeking to construct wireless communication antennas.  Plaintiff therefore lacks standing to assert its unconstitutional vagueness claim, and the claim will be dismissed.


### 7.        Plaintiff's Nuisance Claim

To assert a private nuisance claim pursuant to New Jersey law, a plaintiff must demonstrate an invasion that is either:  (a) intentional and unreasonable; or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.  *Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes*, 90 N.J. 582, 592 (1982).  "An invasion is intentional if the actor purposely causes it or knows that the invasion is substantially certain to result from his conduct."  *Id.*  "An intentional invasion of another's use is unreasonable if:  (a) the gravity of the harm outweighs the utility of the actor's conduct, or (b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible."  *Id.*

Here, Plaintiff alleges only that Defendants engaged in the construction and use of the Tower, and that the Tower is located adjacent to Plaintiff's property.  (Am. Compl. ¶¶ 13, 32-35; Verified Supplement to Am. Compl. ¶ 19.)  Plaintiff claims that the construction and operation of the Tower "substantially impair[s] the use and enjoyment of the Rosedale" and "the character of the surrounding area," and has an "adverse impact on surrounding properties."  (Am. Compl.

23

¶ 81.)  These allegations, without more, are insufficient to state a nuisance claim against any of the Defendants.  *See Morse*, 132 F.3d at 906 (stating that "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss").  Plaintiff's nuisance claims will therefore be dismissed.

### C.    Plaintiff's Motion for Partial Summary Judgment of Its Due Process Claims

Plaintiff seeks summary judgment of its due process claims against Defendants.  In light of the Court's dismissal of Plaintiff's constitutional claims against Defendant Jones and the Wireless Carriers, the Court will dismiss as moot Plaintiff's motion with respect to its due process claims against those defendants.

With respect to Plaintiff's substantive due process claim against the Borough, the Court will deny that motion because, for reasons already explained, that claim should be dismissed.  As for Plaintiff's procedural due process claim against the Borough, the Court will deny Plaintiff's motion without prejudice, and permit the parties to engage in further discovery with respect to that claim.

### III.    CONCLUSION

For these reasons:  (1) Cingular's motion to dismiss the Verified Supplement [docket entry #54] is denied; (2) the Municipal Defendants' motion to dismiss the Verified Supplement [docket entry #60] is denied; (3) T-Mobile's motion to dismiss the Verified Supplement [docket entry #59] is denied; (4) Cingular's motion to dismiss and for summary judgment is granted in part and denied in part [docket entry #19]; (5) Defendant Jones's motion to dismiss [docket entry

#20] is granted; (6) the Borough's motion to dismiss and for summary judgment [docket entry

#21] is granted in part and denied in part; and (7) Plaintiff's motion for partial summary

judgment [docket entry #70] is denied.  The only claims remaining are:  (1) Plaintiff's procedural

due process claim against the Borough; and (2) Plaintiff's claim against Defendants for violating

the general site plan approval requirements of the Borough's Land Development Ordinance

§ 195-33B(10) based on the Borough's alleged lack of immunity from its ordinances.  An

appropriate form of order is filed herewith.


Dated:  December 18, 2006

                                                          s/ Garrett E. Brown, Jr.
                                                      GARRETT E. BROWN, JR., U.S.D.J.